UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **BELINDA KAY DICKSON** | * | **CIVIL ACTION NO. 18-0854** |
| **VERSUS** | * | **JUDGE TERRY A. DOUGHTY** |
| **ANDREW SAUL, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT & RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED for further proceedings.**

### Background & Procedural History

Belinda Dickson filed the instant application for Title XVI Supplemental Security Income payments on June 9, 2015. (Tr. 10, 134-139). She alleged disability as of November 4, 2014, because of head aneurysm, lung disease, arthritis, COPD, bipolar, anxiety, depression, and schizophrenia. (Tr. 150, 154). The state agency denied the claim at the initial stage of the administrative process. (Tr. 46-54, 57-60). Thereafter, Dickson requested and received a November 16, 2016, hearing before an Administrative Law Judge ("ALJ"). (Tr. 24-45). However, in a July 26, 2017, written decision, the ALJ determined that Dickson was not disabled under the Social Security Act, finding at step five of the sequential evaluation process that she was able to make an adjustment to work that exists in significant numbers in the national economy. (Tr. 7-20). Dickson appealed the adverse decision to the Appeals Council. On

April 27, 2018, however, the Appeals Council denied Dickson's request for review; thus the ALJ's decision became the final decision of the Commissioner. (Tr. 1-3).

On June 27, 2018, Dickson sought review before this court. Succinctly restated, she contends that the ALJ's residual functional capacity determination are not supported by substantial evidence. Briefing is complete; the matter is ripe.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical

2

or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis;

under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## ALJ's Findings

### I. Steps One, Two, and Three

The ALJ determined at step one of the sequential evaluation process that the claimant had not engaged in substantial gainful activity during the relevant period. (Tr. 12). At step two, she found that the claimant suffers from the severe impairments of cervical degenerative disc disease, osteoarthritis, peripheral artery disease with intermittent claudication, major depressive disorder, and anxiety disorder. (Tr. 12).[1] She concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. (Tr. 12-14).

### II. Residual Functional Capacity

The ALJ next determined that the claimant retained the residual functional capacity ("RFC") to perform light work,[2] except that she would be limited to jobs with simple, repetitive,

---

[1] She further found no medically determinable impairment related to aneurysms, COPD, bipolar disorder, schizophrenia, or substance abuse disorder. *Id*.

[2] Light work entails:

> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If

1-2-3 step instructions. (Tr. 14-19). She also would be further limited to no direct interaction with the public and only occasional interaction with coworkers or supervisors, in a job dealing mainly with things rather than people. *Id*.

## III. Steps Four and Five

At step four, the ALJ determined that the claimant had no past relevant work. (Tr. 21). Accordingly, she proceeded to step five. At this step, the ALJ determined that the claimant was a younger individual, with at least a high school education, and the ability to communicate in English. *Id*. Transferability of skills was not an issue. *Id*.

The ALJ then observed that given the claimant's vocational factors, and if she had an RFC that did not include any non-exertional limitations, then the Medical-Vocational Guidelines would direct a finding of not disabled. 20 C.F.R. § 404.1569; Rules 202.20, Table 2, Appendix 2, Subpart P, Regulations No. 4; Tr. 19-20. However, because the claimant's RFC *did* include non-exertional limitations, the ALJ consulted a vocational expert ("VE") to determine whether, and to what extent the additional limitations eroded the occupational base for light work. *Id*. In response, the VE identified the representative jobs of housekeeper – light, *Dictionary of Occupational Titles* ("DOT") Code # 323.687-014; hand packager – light, DOT # 920.687-018; and food preparation worker – light DOT # 311.674-014, that were consistent with the ALJ's RFC and the claimant's vocational profile. (Tr. 20, 41).[3]

---

someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

[3] The VE responded that for the housekeeper, hand packager, and food preparation worker jobs, there were 229,000, 466,000, and 196,800 positions, respectively, available nationally. (Tr. 41). This incidence of work constitutes a significant number of jobs in the "national economy." 42 U.S.C. § 423(d)(2)(A); *Johnson v. Chater*, 108 F.3d 178, 181 (8th Cir. 1997) (200 jobs at state level and 10,000 nationally, constitute a significant number).

5

## **Non-Exhaustive Chronology of Relevant Medical Evidence**

On November 6, 2014, Dickson saw Robert Parker, D.O., as a new patient for her neck and diffuse joint pain. (Tr. 229-230). She had been involved in a motor vehicle accident in 1999. *Id.* She recently had moved to the area and was trying to work, but was unable to do so because of pain. *Id.* She had dyspnea, cough, shoulder and back symptoms, arthralgias, plus swelling and stiffness localized to one or more joints. *Id.* She had anxiety and depression. *Id.* Straight leg test was positive. *Id.* Cervical spine pain was elicited upon motion. *Id.* Parker diagnosed intervertebral disc degeneration, osteoarthritis, and cervicalgia. *Id.*

On January 22, 2015, Dickson returned to Parker for a wellness visit. (Tr. 226-228). She had no trouble concentrating on things. *Id.* She was an every day smoker. *Id.* She had been doing well with her Tramadol, but it made her sleepy. *Id.* She had no back pain and no myalgias. *Id.* Palpation of the shoulders elicited pain. *Id.* The cervical spine showed tenderness on palpation and pain with motion. *Id.* Parker diagnosed depression, anxiety disorder NOS, cervicalgia, osteoarthritis, and intervertebral disc degeneration. *Id.*

On March 6, 2015, Dickson was seen by Parker for complaints of sore throat, body ache, and chills. (Tr. 225-226). The lumbosacral spine exhibited tenderness on palpation, with muscle spasms of the paraspinal muscles and pain throughout the range of motion. *Id.* Gait and stance were normal. *Id.* Parker diagnosed acute upper respiratory infection. *Id.*

Dickson returned to Dr. Parker on March 11, 2015. (Tr. 223-225). Her chief complaints were headache and sinus. *Id.* Parker diagnosed acute upper respiratory infection, depression, anxiety disorder NOS, cervicalgia, osteoarthritis, intervertebral disc degeneration, and acute bronchitis. *Id.*

Dr. Parker renewed Dickson's medication on April 27, 2015. (Tr. 222-223).

Dickson next saw Dr. Parker on May 27, 2015. (Tr. 220-222). She was seen for

follow-up for chronic pain, and had been having mood swings where she yelled at her family and others. *Id.* Parker assessed chronic pain, and referred her for counseling because of her depression. *Id.*

Dickson returned to Parker on June 8, 2015. (Tr. 218-219). She complained of cough, congestion, shortness of breath, and fever. *Id.* She had been working in the dust and had lost weight recently. *Id.* She had had fever and left shoulder pain as well. *Id.* Parker diagnosed acute bronchitis, depression, and osteoarthritis. *Id.*

On June 9, 2015, Dickson was seen by Joni McDonald, LCSW, for individual psychiatric therapy. (Tr. 262-263). She presented with dysphoric mood and tearful affect. *Id.* Anxiety was noted. *Id.* She stated that she did not adjust to people well. *Id.* She had issues with her husband leaving her. *Id.* She was homeless for a time and even lived in a graveyard. *Id.* She was unable to find a job because of her teeth. *Id.* She endorsed a host of symptoms. *Id.* She reported current regular use of marijuana, caffeine, and cigarettes. *Id.* McDonald administered diagnostic testing which supported the finding that she met the criteria for major depressive affective disorder, recurrent, severe without psychotic behavior, and anxiety disorder NOS. *Id.*

Dickson saw Dr. Parker on July 8, 2015. (Tr. 217-218, 255-257). She was a current every day smoker. *Id.* She was experiencing increased leg pain and claudication symptoms. *Id.* Dickson was trying to obtain disability and had attached the services of an attorney. *Id.* She had no fatigue or malaise. *Id.* Her psychiatric exam was normal. *Id.* Parker diagnosed muscle cramps and intermittent claudication. *Id.* He ordered an arterial duplex scan of the lower extremity. *Id.*

Dickson returned to Dr. Parker on August 7, 2015, for follow-up for her chronic pain. (Tr. 254-255). She had been doing well with no new complaints of pain. *Id.*

On August 7, 2015, plaintiff's treating physician, Robert Parker, D.O., completed an

attorney-supplied medical source statement. (Tr. 274-275). Parker estimated that Dickson would miss two days per month because of her medical condition. *Id.* He further indicated that she could sit continuously, frequently stand, walk, stoop, and occasionally climb. *Id.* There were no limitations associated with environmental factors. *Id.* He further noted that Dickson could frequently lift and carry up to ten pounds and frequently lift and carry twenty or more pounds. *Id.* She could continuously use her hands for fine and gross manipulation, but only frequently raise her arms bilaterally over her shoulders. *Id.* He further indicated that Dickson's conditions caused her moderate pain, which would cause her to be off task 50 percent of the time. *Id.* She also would need to take unscheduled breaks beyond the normal fifteen minute break in the morning and afternoon, plus the lunch break. *Id.*

On August 21, 2015, Dickson returned to Dr. Parker. (Tr. 252-254). At that time, her chief complaint was leg pain. *Id.* She was a current every day smoker. *Id.* She had been doing more manual work, and thus had increased joint pain. *Id.* She was taking her medication as prescribed. *Id.* Her back pain was localized to one or more joints. *Id.* She had no psychological symptoms. *Id.* Her joints remained tender. *Id.* Parker diagnosed intermittent claudication, severe; recurrent major depression; chronic pain; cervicalgia; and osteoarthritis. *Id.*

On August 26, 2015, non-examining agency physician, William Harrison, M.D., completed a physical residual functional capacity assessment that was consistent with the full range of light work. (Tr. 52-53).

On September 7, 2015, non-examining agency psychologist, Paul Chery, Ph.D., reviewed the administrative record and determined that Dickson did not have a psychiatric medically determinable impairment. (Tr. 50-51).

A November 6, 2015 arterial doppler of the right lower extremity showed moderate to

severe decreased arterial vascular flow throughout the entire extremity, which could represent either diffuse disease throughout or stenotic lesion in the common femoral artery. (Tr. 260-261).

A November 6, 2015, arterial doppler of the left lower extremity showed moderate to severe reduced arterial vascular flow to the entire extremity most likely from a stenotic lesion in the common femoral artery. (Tr. 260-261).

Dickson saw Dr. Parker on November 10, 2015. (Tr. 252). She wanted a specialist consultation in Shreveport. *Id.*

On December 9, 2015, Dickson saw Brijesh Patel, M.D., at University Health-Shreveport. (Tr. 268-269). Dickson complained of bilateral calf pain after walking a few yards, worse on the right side. *Id.* Pain improved after five-ten minutes of rest. *Id.* She had had this pain for the past two years, with it worsening over the past year. *Id.* She also reported severe bilateral hip pain, worse after prolonged sitting. *Id.* She reported experiencing chronic dyspnea after walking only two blocks. *Id.* She smoked less than ½ pack of cigarettes per day. *Id.* She was diagnosed with claudication/PAD and advised to obtain a CT angio with run off to evaluate the extent and severity of PAD. *Id.* She was to follow-up in three months. *Id.*

## Analysis

### I. RFC

In her decision, the ALJ reviewed the available evidence, including the hearing testimony, plaintiff's activities of daily living, treatment records, the impressions of plaintiff's treating physician, and the assessment of the non-examining agency physician and psychologist. (Tr. 14-19). In deriving plaintiff's RFC, the ALJ specifically addressed the medical opinion evidence. First, she gave "partial" weight to Dr. Parker's findings. (Tr. 17). She gave "great weight" to his exertional limitations, which were consistent with at least light work, but then

9

discounted his other limitations, i.e., that Dickson would miss two days of work per month, be off task 50 percent of the time, and require unscheduled work breaks. *Id*. In so doing, the ALJ explained that Dr. Parker's findings were internally inconsistent and that his own treatment records did not support such severe limitations or pain. *Id*.

In lieu of the limitations recognized by plaintiff's treating physician, the ALJ assigned "great weight" to the assessment of the non-examining agency physician, Dr. Harrison. (Tr. 17-18). The ALJ also assigned "little weight" to the finding of the non-examining agency psychologist, Paul Cherry, because subsequent evidence demonstrated that Dickson had limitations caused by her mental impairments. (Tr. 18).

Plaintiff contends that the ALJ erred by impermissibly discounting the non-exertional limitations identified by her treating physician. The court observes that "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Martinez v. Chater*, 64 F.3d 172, 175-76 (5th Cir.1995) (citation omitted). However, an ALJ cannot reject a medical opinion without an explanation supported by good cause. *See Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir.2000) (citations omitted).

Here, the ALJ purported to discount the non-exertional limitations assigned by Dr. Parker because Parker found that she only had moderate pain and because Parker's treatment records did not support such severe limitations or pain. However, the ALJ cannot simply "pick and choose" those portions of the medical provider's findings that support her decision and discard the remainder. *Loza, supra*. Moreover, the court is not persuaded that plaintiff's treatment records and activities of daily living are so benign that they support a finding that her physical impairments permitted her to perform the full range of light work.

Further, a non-examining physician's opinion does not provide good cause for an ALJ to discount the findings of an examining physician. *See Lamb v. Bowen*, 847 F.2d 698, 703 (11th

10

Cir. 1988) (addressing ALJ's reliance upon non-examining physician's opinion to discount findings of treating physician).   The Fifth Circuit cited *Lamb* for the proposition that the reports of non-examining physicians do not provide substantial evidence when the non-examining physician's medical conclusions "contradict or are unsupported by findings made by an examining physician."   *Villa v. Sullivan,* 895 F.2d 1019,1024 (5th Cir. 1990) (citing, *Lamb, supra*; and *Strickland v. Harris*, 615 F.2d 1103, 1109-10 (5th Cir. 1980)).

Here, the non-examining agency physician's implicit finding that plaintiff's physical impairments did not cause her to suffer any non-exertional limitations conflicts with the opinion of the treating, examining physician.   As such, the non-examining agency physician's opinion does not constitute substantial evidence to support the ALJ's decision.

In addition, the Fifth Circuit has remarked that, "*absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist*, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)."   *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000) (emphasis added).   In this case, there was no other evidence from a treating or examining physician that controverted the impression of plaintiff's treating physician.   Therefore, the ALJ was obliged to address each of the § 404.1527(d)(2) (now § 404.1527(c)) factors.[4]   While the Commissioner argued that the ALJ effectively touched upon most the factors, the ALJ did not engage in a "detailed analysis" of the pertinent criteria.

Plaintiff also faults the ALJ for autonomously deriving the effects of plaintiff's mental impairments, without the benefit of an assessment by a mental health provider.   The court is

---

[4] Although § 404.157(c) was amended, the changes do not apply to claims filed before March 27, 2017.

11

constrained to agree. While the ALJ attributed significant limitations to plaintiff's mental impairments, there is no evidence that the assigned limitations fully and accurately capture the effects of plaintiff's mental impairments.

Upon review, it is apparent that a significant portion of plaintiff's treatment notes were not in the administrative record at the time the state agency physician and psychologist issued their opinions. For example, from what the court may discern, the non-examining state agency psychologist did not have the benefit of Joni McDonald's interview findings and test results. Furthermore, the non-examining state agency physician did not have Dr. Parker's medical source statement and other treatment records.

In addition, Dr. Parker apparently completed his medical source statement in August 2015, which was before plaintiff obtained the arterial dopplers that confirmed the severity of her peripheral arterial disease.[5] Had Parker considered plaintiff's peripheral arterial disease, he might have further limited her ability to stand and/or walk.[6]

The ALJ also discounted plaintiff's complaints of hip pain with prolonged sitting because she had no impairment related to hip pain. (Tr. 19). In December 2015, however, plaintiff complained of severe hip pain to Dr. Patel. There is no indication that Dr. Parker, or any other

---

[5] In fact, Parker did not list peripheral arterial disease as one of plaintiff's impairments on the medical source statement. *See* Tr. 274. Upon remand, the parties may need to explore whether plaintiff's peripheral arterial disease meets the requirements for listing 4.12. In the absence of systolic blood pressure readings associated with the arterial dopplers, additional testing may be required. *See* Listings 4.00(C)(6) and 4.12.

[6] In her decision, the ALJ noted the absence of additional medical treatment records for the period from the end of 2015 through November 2016. Moreover, plaintiff was scheduled to follow-up in three months with Dr. Patel for additional testing, but apparently never did. The court also finds it curious that plaintiff did not seek further treatment. This issue may be addressed upon remand.

physician, considered the cause or effect of this impairment.

In the end, it is apparent that the ALJ autonomously derived plaintiff's RFC, without the benefit of a supportive medical opinion. In *Ripley v. Chater*, as here, the Commissioner argued that the medical evidence substantially supported the ALJ's decision. *Ripley v. Chater*, 67 F.3d 552, 557-558 (5th Cir. 1995). The Commissioner pointed to medical reports discussing the extent of plaintiff's injuries, including a four year history of back troubles. *Id*. However, without reports from qualified medical experts, the Fifth Circuit was unable to conclude that the evidence substantially supported the ALJ's residual functional capacity assessment because the court could not determine the "effects of [plaintiff's] conditions, no matter how 'small.'" *Id*. The only evidence that described plaintiff's ability to work was plaintiff's own testimony, which, when read in proper context, failed to support the ALJ's residual functional capacity assessment. *Id*.[7]

The instant case is materially indistinguishable from *Ripley, supra*. The record is devoid of a cognizable medical source statement that supports the ALJ's RFC. Moreover, plaintiff's own testimony was not consistent with the ALJ's RFC. (Tr. 35-37). Under these circumstances, the court is compelled to find that the ALJ's assessment is not supported by substantial evidence. *See Williams v. Astrue*, 2009 WL 4716027 (5th Cir. Dec. 10, 2009)

---

[7] The Commissioner argues that the absence of a corroborating medical source statement is not fatal to the ALJ's decision. *Taylor v. Astrue*, 706 F.3d 600 (5th Cir.2012); *Joseph-Jack v. Barnhart*, 80 Fed. Appx. 317 (5th Cir.2003). The court agrees. In *Taylor*, however, the ALJ relied on evidence from a treating physician and a medical consultant who testified at the hearing. *See Taylor v. Astrue*, No. 10-1158, 2011 WL 4091506, at *4 (N.D. Tex. June 27, 2011). Furthermore, *in Joseph-Jack*, the claimant was seen by a consultative physician, who found no disability from an orthopedic standpoint. *See Joseph-Jack v. Barnhart*, No. 02-0088 (W.D. La. Feb. 12, 2002) (R&R). Needless to say, the medical source foundation for the ALJs' decisions in *Taylor* and *Joseph-Jack* is noticeably absent here.

(unpubl.) ("an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions"); *Ripley, supra* (substantial evidence lacking where: no medical assessment of claimant's residual functional capacity, and claimant's testimony was inconsistent with ALJ's assessment); *Butler v. Barnhart*, Case Number 03-31052 (5th Cir. 06/02/2004) (unpubl.) (in the absence of medical opinion or evidence establishing that the claimant could perform the requisite exertional demands, the ALJ's determination is not supported by substantial evidence).

### III.    Step Five and Remand

Because the foundation for the ALJ's step five determination was premised upon an RFC that is not supported by substantial evidence, the court further finds that the Commissioner's ultimate conclusion, that plaintiff is not disabled, likewise is not supported by substantial evidence.

The courts enjoy the authority to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.  42 U.S.C. §405(g).  When reversal is warranted, the matter is remanded with instructions to make an award only if the record enables the court to conclusively determine that the claimant is entitled to benefits.  *See Ferguson v. Heckler*, 750 F.2d 503, 505 (5th Cir. 1985); *see also Rini v. Harris*, 615 F.2d 625, 627 (5th Cir.1980) (reversing and remanding with direction to enter judgment where the evidence was not substantial and the record clearly showed the claimant's right to benefits).  The instant record is not so disposed.  Plaintiff's residual functional capacity assessment remains indeterminate.

## Conclusion

For the foregoing reasons,

IT IS RECOMMENDED that the Commissioner's decision be REVERSED and REMANDED pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent herewith.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before a final ruling issues.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 26th day of July 2019.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE